Scheduled for Oral Argument on _____

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

## 15-1430

◆◆

JOHN M.E. SAAD,

*Petitioner,*

—v.—

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

_____

ON PETITION FOR REVIEW FROM
THE SECURITIES AND EXCHANGE COMMISSION (SEC)

## BRIEF FOR PETITIONER

STEVEN NATHAN BERK
BERK LAW PLLC
2002 Massachusetts Avenue, NW,
   Suite 100
Washington, DC 20036
(202) 232-7550
steven@berklawdc.com

RACHEL SCHULMAN
RACHEL SCHULMAN, ESQ. PLLC
14 Bond Street, Suite 143
Great Neck, New York 11021
*Of counsel*

April 27, 2016                      *Attorneys for Petitioner*

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………i

TABLE OF AUTHORITIES……………………………...……..…iii

CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW,………...…iv
    AND RELATED CASES

JURISDICTIONAL STATEMENT……………………………….......v

STATEMENT OF THE STANDARD OF REVIEW…….……………..vii

STATEMENT OF ISSUES…………....……………………….... ..vii

STATUTES AND REGULATIONS………………………...…… vii

STATEMENT OF THE CASE…......………………………….........1

SUMMARY OF ARGUMENT…………………………..........................1

STANDING……………………………………………………2

ARGUMENT…………………………………………..…3

     I.    Introduction………………………………………3

     II.   Facts………………………………………………4

     III.  Procedural History…………………………………..…6

         A.  The NAC's Decision………………………………..6

         B.  The SEC's Decision on Review of the……………………12
            NAC's Decision

III.   Legal Argument

A.  THIS COURT SHOULD REVERSE THE SEC'S………13
REJECTION OF MITIGATING FACTORS, AS
WELL AS POTENTIALLY MITIGATING FACTORS,
SO AS TO LIFT SAAD'S LIFETIME BAR FROM
THE FINANCIAL SERVICES INDUSTRY.

1.     Employment Termination is a Mitigating………15
Factor that Applies Herein

2.     Stress is a Mitigating Factor that Applies………16
Herein

3.     Other "Potentially Mitigating" Factors Apply….17
Herein

B.  THIS COURT SHOULD REVERSE THE SEC'S...............18
IMPOSITION OF A LIFETIME BAR AS
IMPERMISSIBLY PUNITIVE, ESPECIALLY IN
LIGHT OF SAAD'S NINE SUBSEQUENT YEARS
OF COMPLAINT-FREE CONDUCT.

CONCLUSION…………………………………………………………….19

CERTIFICATE OF COMPLIANCE……………………………………20

CERTIFICATE OF SERVICE…………………………………………..21

# TABLE OF AUTHORITIES

## Federal Decisions

*Blinder, Robinson & Co. v. S.E.C.*,
  837 F.2d 1099 (D.C. Cir. 1988)……………………………………………13

*McCarthy v. S.E.C.*,
   406 F.3d 179 (2d Cir. 2005)…………………………………………13, 14

*Occidental Petrol Corp. v. S.E.C.,*
  873 F.2d 325 (D.C. Cir. 1989) ………………………………………..14

*Otto v. S.E.C.*,
  253 F.3d 960 (7th Cir. 2001) …………………………………………..13

*PAZ Sec., Inc. v. S.E.C.*,
   494 F.3d 1059 (D.C. Cir. 2007) ……………………………………..13

*Republic Steel Corp. v. NLRB*,
   311 U.S. 7 (1940)……………………………………………………...14

*Saad v. S.E.C.*,
   718 F.3d 904 (D.C. Cir. 2013)………………………………..………3

*Steadman v. S.E.C.*,
  603 F.2d 1126 (5th Cir. 1979)………………………………………..14

*Steadman v. S.E.C.*,
   450 U.S. 91 (1981)…………….………………………………...14

*Wright v. S.E.C.*,
112 F.2d 89 (2d Cir.1940)…………..…………………………………...14

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Petitioner certifies as follows:

A.   <u>Parties, Intervenors, and Amici Curiae</u>.  The parties herein are Petitioner Saad and Respondent SEC.

B.   <u>Rulings Under Review</u>.  The ruling under review is the SEC's Opinion dated August 9, 2015.  A.106.

C.   <u>Related Cases</u>.  Undersigned counsel is not aware of any related cases pending in this Court or any other Court.

<u>/s/ Steven Burk</u>
Steven Nathan Burk
*Attorney for Petitioner*

## JURISDICTIONAL STATEMENT

This matter arises on direct appeal from the Securities and Exchange Commission ("SEC" or "Commission).   15 U.S.C. § 78y provides as follows:

> **(1)** A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

> **(2)** A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated by the Commission for that purpose. Thereupon the Commission shall file in the court the record on which the order complained of is entered, as provided in section 2112 of Title 28 and the Federal Rules of Appellate Procedure.

> **(3)** On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part.

Previously, this matter was before this Circuit Court following an SEC decision that imposed a lifetime bar on Petitioner's participation in the financial services industry.  This Court remanded the matter to the SEC, holding that the SEC had abused its discretion in affirming a FINRA disciplinary decision without proper review by the SEC.  A29 (Decision of the D.C. Circuit, dated June 11, 2013).

Upon remand, the SEC delegated its authority to FINRA.  FINRA authorized a proceeding before the National Adjudicatory Council ("NAC"), which rendered a decision on March 16, 2015.  A27.  Pursuant to the Securities Exchange Act Section 19(e)(2), the SEC sustained the FINRA Sanction.  A106 (Opinion of the Commission, dated October 9, 2015).  The instant appeal seeks reversal of the SEC's October 9, 2015 Decision.

## STATEMENT OF THE STANDARD OF REVIEW

In reviewing a disciplinary sanction imposed by FINRA, the SEC must determine whether, with "due regard for the public interest and the protection of investors," that sanction "is excessive or oppressive."   15 U.S.C. § 78s(e)(2).   The Circuit court reviews the SEC's conclusions regarding sanctions to determine whether those conclusions are arbitrary, capricious, or an abuse of discretion.  *Saad v. S.E.C.*, 718 F.3d 904 (D.C. Cir. 2013) (citing *Siegel v. SEC*, 592 F.3d 147, 155 (D.C. Cir. 2010); *PAZ Sec., Inc. v. SEC*, 566 F.3d 1172, 1174 (D.C. Cir. 2009)).

## STATEMENT OF ISSUES

On remand, this Court instructed the SEC to review all mitigating and "potentially" mitigating factors before upholding a lifetime bar on a broker-dealer for violating disciplinary rules.

Issue 1:     Did the SEC comply with the Court's instruction?

Issue 2:     Did the SEC continue to abuse its discretion in maintaining the lifetime bar?

## STATUTES AND REGULATIONS

FINRA Sanction Guidelines.  A84.

## STATEMENT OF THE CASE

This case will determine whether the SEC's lifetime bar on John Saad, a securities broker-dealer will stand.  The SEC will maintain that even after considering all mitigating and potentially mitigating factors, it correctly determined that these recognized limitations are inapplicable to this case.  Saad will, to the contrary, stand by this Court's prior conclusion that the SEC has abused its discretion, and the lifetime bar should be lifted.

## SUMMARY OF ARGUMENT

This Court correctly determined that the SEC abused its discretion in affirming the lifetime bar imposed by FINRA and affirmed by the SEC.  The SEC's claim that two recognized mitigating factors, employment termination and stress, do not apply to Saad is wrong and unsupported in fact.  Termination for conduct within the scope of employment, which had no impact on investors or third parties, should have been deemed mitigating.  Moreover, the SEC's failure to understand and appreciate stress is remarkable.  Despite conceding that Saad was under extreme stress, it rejected this recognized factor, without a hint of scientific or medical evidence, and instead relied upon conjecture and stereotype.  Finally, the SEC's sanction is blatant punishment and thus beyond FINRA's authority to impose.  The lifetime bar cannot be viewed as remedial, particularly in light of Saad's prior and subsequent "clean" record.

1

## STANDING

Petitioner has standing pursuant to U.S.C. 78y(1) ("A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.").

## ARGUMENT

### I.     Introduction

Petitioner John M.E. Saad ("Petitioner" or "Saad") herein appeals an egregious sanction imposed upon him by Respondent Securities and Exchange Commission ("Respondent or "SEC"), which now unlawfully bars him from ever again working in the securities industry.  This Court has recognized that such a lifetime bar is "the securities industry equivalent of capital punishment." A11.  Indeed, the Court made this statement in its prior review of this matter, in which it ruled that the SEC had "abused its discretion in failing to adequately address all of the potentially mitigating factors that the agency should have considered when it determined the appropriate sanction."  A12.

Saad was a broker-dealer who, admittedly, exercised very poor judgment during a stressful time in wrongfully submitting to his employer certain false expense claims.  Saad does not dispute that he violated FINRA Conduct Rule 2110, which requires that members observe high standards of commercial honor and just and equitable principles of trade.  A13.  Saad does, however, urge this Court to determine that the SEC's conclusion regarding the lifetime bar sanction is arbitrary, capricious, and an abuse of discretion.

The reality is that Saad's false expense claims involved only $1141.  As he has explained, stresses in both his professional life and his family life led

him to make thoughtless decisions that are deserving of an appropriate sanction.
Yet a lifetime industry bar on a broker-dealer (with an otherwise clean record)
who supports himself, his wife, and two children, simply cannot be condoned
by this Court.  Prior to Saad's wrongful acts, he had no record of misconduct.
Likewise, for nine years since these wrongful acts, he has not been the subject
of any other disciplinary action or claim of wrongdoing or dishonesty.  While
the law does grant the SEC discretion to regulate the financial services industry,
it does not permit the SEC to ruin a broker-dealer's profession when his
wrongdoing was relatively minor, did not harm investors, and coincided with
substantial mitigating factors, as described below.

## II.    <u>Facts</u>

The following undisputed facts are taken from the Court's prior opinion
in this matter.  Saad was employed by Penn Mutual and registered with its
broker-dealer affiliate HTK, a FINRA member firm.  Saad was registered as an
investment company products and variable contracts limited representative, a
general securities representative, and a general securities principal.

As of late 2005, Saad's business was in a steady slump.  His sales had
declined and his business travel seemed nearly non-existent, although such
travel was a significant component of his professional responsibilities.  In July
2006, a business opportunity presented itself in Memphis, and Saad scheduled a

trip to Memphis from his hometown of Atlanta.   When this business opportunity abruptly vanished, Saad was ashamed and fearful of reporting the cancellation to his employer.  He decided not to report it; instead, he checked into an Atlanta hotel for two days. He then submitted to his employer a false expense report claiming travel and hotel expenses in Memphis.  He forged an airline travel receipt and a Memphis hotel receipt, and attached those receipts to his expense report.   Saad also submitted an unrelated false expense claim wherein he bought a cell phone for an insurance agent employed at another firm, and submitted it as a business expense purporting to be a replacement for his own cell phone.

At his disciplinary hearing, Saad explained the significant life stresses he had been enduring when he submitted these false expenses.  Not only had his business been in a prolonged slump, but his superiors at Penn Mutual had admonished him in June 2006 with a production warning requiring him to increase sales. At the same time, one of his twin one-year olds was very ill with a stomach disorder that required surgery and repeated hospitalizations.

Saad's wrongdoing was discovered by the Atlanta office administrator when, in addition to the false Memphis receipts, Saad submitted receipts for drinks that same weekend at the Atlanta hotel lounge.  His lies were apparent as he could not have been in both locations at the same time.  Obviously, Saad's

stresses had mounted to the point where he was exercising very poor judgment. His actions were certainly not premeditated. Saad attempted to withdraw the drinks receipt, by tossing it into the trash, but the office administrator retrieved it and forwarded it to Penn Mutual's home office. In September 2006, before the SEC became involved in this matter, Penn Mutual and HTK terminated Saad for this wrongdoing.

### III.   <u>Procedural History</u>

#### A.    <u>The NAC's Decision</u>

On remand from this Court, the SEC, in turn, remanded the matter to FINRA's National Adjudicatory Council ("NAC") for reconsideration of Saad's lifetime-bar sanction. A27. After reviewing briefs from both sides, the NAC issued a Decision dated March 16, 2015. Although the Decision purported to address the relevant mitigating factors, it fell short of this Court's directive by conducting a review that did not apply them appropriately.

Specifically, the NAC addressed five questions posed to it by the SEC. The first question was a pure legal one, asking whether FINRA's Sanction Guideline Number 14, which deals with discipline prior to regulatory detection, applies to individuals. The SEC determined that it does. Thus, the second question asked whether Saad's claim that HTK had terminated his employment before FINRA detected his misconduct was mitigating. The NAC stated that it

"has consistently rejected arguments that being terminated is a mitigating factor for purposes of sanctions."  A38.  It further stated

> there are good reasons for not crediting a firm's decision to terminate a respondent with mitigation.  First, being fired for engaging in misconduct is usually an inherent result of the misconduct itself. . . . Moreover, a firm's termination of an individual does not disqualify an individual from working elsewhere, as demonstrated by Saad's ability to quickly join another company that did not require him to have a securities registration.

A.39 (citations omitted).

This analysis overlooked numerous significant factors.  Nowhere did it address the fact that, in this industry, termination for cause constitutes a harsh sanction in and of itself, as it is an inevitable "black mark" that will undoubtedly hamper one's career prospects.  Furthermore, the analysis credited Saad's ability to join another company, but disregarded the issue of what position he took and what prospective positions, and advancements, his lifetime bar has been precluding him from obtaining.

The third question addressed whether Saad's personal and professional stresses at the time of his misconduct were mitigating.  A39.  The NAC stated as follows:

> Personal problems might give rise to some mitigation *if* there is evidence that such problems interfered with an ability to comply with FINRA rules or that violations resulted from, or were exacerbated by, such problems.  For example, in *Paul David Pack*, the SEC found that 'uncontroverted expert medical evidence that

7

> [the applicant's] misconduct was the product of stress compounded by clinical depression and a chronic sleep disorder' mitigated the applicant's submission to a prospective employer of an altered production statement and his false representation that the statement reflected his own sales.  51 S.E.C. 1279, 1283 (1994).  Likewise, in *District Business Conduct Committee v. Nelson*, the NBCC found that respondent's chronic fatigue syndrome, which caused him to remain bedridden at home or in the hospital for long periods of time, mitigated his failures to respond to FINRA requests for information.

A.39-40.  The NAC concluded that the burden to show that stress interfered with one's ability to cope with FINRA's rules is a "difficult burden." A39-41. It further stated that "[e]ven where personal circumstances such as stress are mitigating, they are weighed together with all other relevant considerations, including any other aggravating or mitigating factors."  A41.

As to Saad, the NAC clearly concluded that he was "**under professional and personal stress around the relevant period, and that such stress was significant**."  A42 (emphasis added).  Yet the NAC went on to deny that his stress was a mitigating factor.  Strangely, it determined that his conduct "did not involve a momentary, stress-caused lapse in, or interference with, his judgment. Instead, it involved several separate decisions that were, as we said in our first decision, 'premeditated, intentional and ongoing.'"  It thus concluded that "Saad's willingness to provide false documents to, and misappropriate funds from, his employer gives no assurance that Saad would choose to act in an

ethical manner were he to again face a stressful situation related to his job or family, which could recur at any time." A45.

This analysis exemplifies an impermissible over-reach by the SEC. It mischaracterizes Saad's acts over the course of a misguided weekend as some sort of long-term scheme to misappropriate $1141. This mischaracterization strains logic. Saad did not have the ill-intent to harm anyone, and indeed caused harm to no individuals. His personal life was in crisis as one of his twin babies was suffering from a stomach disorder that required surgery and repeated hospitalizations. He, his wife, and their two babies all endured serious prolonged stress due to this terrifying situation. Saad's career was also in peril. He had been issued a warning to increase sales, and was having grave trouble doing so. When the Memphis opportunity arose, he was geared up finally to close a deal and get back on track. But when the opportunity suddenly vanished, he froze in panic. Overwhelmed with stress at home and at work, he escaped for the weekend at an Atlanta hotel. There, he skirted his responsibilities. His subsequent acts in submitting false expenses directly flowed from this errant weekend behavior.

Aside from this isolated misconduct, his record is clean. Never before, and not for the nine years since, has he been the subject of any other disciplinary action or claim of wrongdoing or dishonesty. Thus, the NAC's

predictions were plainly wrong. Concluding that the public needed to be protected from Saad, who never harmed a single investor, just had no basis in fact. Nor did the NAC have any medical evidence to conclude that Saad's stress did not interfere "with his *ability* to comply with FINRA's rules or his understanding of what those rules required in terms of ethical conduct." A44. Considering that Saad's misdeeds were isolated and uncharacteristic of his professional conduct, it seems obvious that his stress did, in fact, alter his capacity to exercise good judgment and comply with his ethical obligations.

The fourth question asked if Saad had raised any other applicable mitigating factors. The NAC concluded that Saad had not. It noted that Saad presented a clean disciplinary history besides the misconduct addressed in this matter but concluded that the existence of a disciplinary history may be an aggravating factor, but not a mitigating one. A46. The NAC also rejected as mitigation (i) the absence of customer complaints since the incident, and (ii) the fact that Saad's wrongful acts did not harm any customers. A48. Again, the NAC dismissed all circumstances surrounding Saad's misdeeds and blindly applied the harshest sanction towards him without adequately applying the mitigating factors.

The fifth question asked what Saad's appropriate sanction should be. The NAC recognized that applicable Guidelines for improper use of funds recommended

> a fine between $2,500 and $50,000 and to consider a bar. Where the improper use resulted from a misunderstanding, or other mitigation exists, the Guidelines recommend a suspension in any or all capacities for six months to two years and thereafter until the respondent pays restitution.

A49. As to Saad, however, the NAC failed to consider sanctions in line with his wrongdoing – in light of the stresses he was undergoing, and the fact that his conduct was juvenile, but ultimately harmless. In his case, a monetary fine and temporary suspension would have aligned much more appropriately than a lifetime bar – a punishment applicable to only the most egregious improper acts by investment professionals who cannot be trusted to engage with investors ever again. Indeed, during the same time that the SEC and FINRA harshly pursued Saad, they forewent prosecution and punishment of **thousands** of investment professionals who knowingly sold billions of toxic collateralized mortgage obligations to investors, nearly destroying the U.S. economy.[1]

---

[1] For further information regarding significant investigations and cases by the SEC, see Securities Enforcement:  2015 Year-End Review, Shearman & Sterling LLP, available at:
http://www.shearman.com/~/media/Files/NewsInsights/Publications/2016/02/Securities-Enforcement-2015-YearEnd-Review-Litigation--02032016-citations-omitted.pdf.

B.    The SEC's Decision on Review of the NAC's Decision

Saad appealed the NAC decision to the SEC, and both parties submitted briefs.  A52, A96.  The SEC denied Saad's request for oral argument.[2]  A104. It issued a written decision on October 9, 2015, denying Saad's appeal.  A106.

The SEC explained the governing standard as follows:

> Under Securities Exchange Act Section 192(e)(2), we will sustain a FINRA sanction unless we find that it is 'excessive or oppressive' or imposes an unnecessary or inappropriate burden on competition.  We also consider whether the sanctions imposed by FINRA are remedial in nature and not punitive.

A111 (footnotes omitted).  The SEC stated that the "collateral consequences" of misconduct, including loss of employment, reputation, and income, are not mitigating, A112, but noted "the Guidelines direct that **employment termination**, which we have held is a form of disciplinary action, **should be considered mitigating if it was related to the misconduct at issue and it occurred before regulatory detection**."  A112-113 (emphasis added).  What occurred in Saad's case is exactly what the Guidelines define as mitigating: Saad was terminated from employment before FINRA investigated his case.

The SEC also gave short shrift to Saad's stress, ruling that "[h]is course of conduct was not the type that one might associate with stress, such as unthinking reaction to a stressful moment that is later redressed."  A113. Saad's

---

[2] Petitioner has not uncovered a single case in which the SEC granted oral argument to a party seeking to reverse a lifetime bar.

misconduct, however, was precisely an "unthinking reaction"; instead of going home to his family to care for his sick child, and calling his office to report the cancelled business trip, he checked into a hotel. He then covered up this personal escape by submitting false expense reports. It is now nine years later and none of this irresponsible behavior has endured. He is a caring father, good husband, and dutiful son. The law simply cannot permit a lifetime punishment for Saad's errant weekend.

## III.    <u>Legal Argument</u>

A.    THIS COURT SHOULD REVERSE THE SEC'S REJECTION OF MITIGATING FACTORS, AS WELL AS POTENTIALLY MITIGATING FACTORS, SO AS TO LIFT SAAD'S LIFETIME BAR FROM THE   FINANCIAL SERVICES INDUSTRY.

This Court has recognized that the SEC does **not** have unfettered discretion in its regulation of investment professionals. *See PAZ Securities, Inc. v. S.E.C*, 494 F. 3d 1059 (D.C. Cir. 2007) (the SEC conducts de novo review of the NASD/FINRA's sanctions); *see also Otto v. S.E.C.*, 253 F.3d 960, 964 (7th Cir. 2001). Deference must also be accompanied by reasoned analysis and vigorous review. The SEC "must do more than say, in effect, petitioners are bad and must be punished," *Blinder, Robinson & Co. v. S.E.C.*, 837 F.2d 1099, 1113 (D.C. Cir. 1988); at the least, it must address "the nature of the violation and the mitigating factors presented in the record." *McCarthy v. S.E.C*, 406

F.3d 179, 189-90 (2d Cir. 2005).

The review must be particularly stringent when the matter involves a lifetime bar. *See, e.g., Steadman v. SEC*, 603 F.2d 1126, 1137-40 (5th Cir. 1979) ("when the Commission chooses to order the most drastic remedies at its disposal, it has a greater burden to show with particularity the facts and policies that support those sanctions and why less severe action would not serve to protect investors"), *aff'd on other grounds,* 450 U.S. 91 (1981). Moreover, any attempt to impose a lifetime bar **must be grounded in remedy and not in punishment**. As explained in *Wright v. S.E.C.*, 112 F.2d 89, 94 (2d Cir. 1940), the true purpose, not just an explanation, must be spelled out. *See id.* at 94. Merely pronouncing a remedial purpose will not cease scrutiny; rather, it will signal the need for further inquiry. *McCarthy*, 406 F.3d at 190; *see also Occidental Petrol. Corp. v. S.E.C.*, 873 F.2d 325, 388 (D.C. Cir. 1989). "[A]s the circumstances in a case suggesting that a sanction is excessive and inappropriately punitive become more evident, the Commission must provide a more detailed explanation linking the sanction imposed to those circumstances if it wishes to uphold the sanction." *Republic Steel Corp. v. NLRB*, 311 U.S. 7 (1940).

This Court further delineated the applicable standard when it remanded the matter to the SEC for consideration of mitigating factors, as well as

"potentially mitigating factors." A12 ("we agree with Saad that the SEC abused its discretion in failing to adequately address all of the potentially mitigating factors that the agency should have considered when it determined the appropriate sanction").

On remand, the SEC disregarded that directive. As is detailed below, its analysis of Saad's (1) employment termination and (2) stress, as mitigating factors, was unlawful. Moreover, the SEC failed adequately to address "potentially mitigating factors" that plainly apply to Saad.

1.    Employment Termination is a Mitigating Factor That Applies Herein

As is described supra, the Guidelines direct that employment termination "**should be considered mitigating if it was related to the misconduct at issue and it occurred before regulatory detection**." A112-113 (emphasis added). What occurred in Saad's case is exactly what the Guidelines define as mitigating: Saad was terminated from employment before FINRA investigated his case. Yet FINRA and the SEC have employed mental gymnastics in rejecting application of this explicit mitigating factor. As the Court of Appeals made clear:

> The Commission cannot use a blanket statement to disregard potentially mitigating factors – especially those, like an employee's termination, that are specifically enumerated in FINRA's own Sanction Guidelines.

A25.   The SEC never acknowledged that in the financial services industry, termination for cause constitutes a harsh sanction in and of itself, as it is an inevitable "black mark" that will undoubtedly hamper one's career prospects. Furthermore, the SEC credited Saad's ability to join another company, but disregarded the issue of what position he took and what prospective positions, and advancements, his lifetime bar has been precluding him from obtaining. The SEC's failure to follow the guidance of the Court of Appeals constitutes an abuse of discretion that warrants reversal.

2.   Stress is a Mitigating Factor That Applies Herein

Likewise, the SEC disregarded the personal and professional stress Saad endured during his acts of misconduct, even though stress is a valid mitigating factor and FINRA found that Saad did, in fact, endure significant stress at the time of his misdeeds.   FINRA went on, however, to apply a hyper-technical standard for stress to be mitigating, ruling that the stress must interfere with one's ability to comply with the relevant rules.   This hyper-technicality makes little sense, and in any event cannot exclude Saad.   Saad had real chronic stress with an ailing twin baby and a serious productivity slump at work that threatened his career.   Plainly, these factors affected his judgment when he skirted his personal responsibilities and checked into a nearby hotel for the weekend without telling his family or his employer.   He then submitted receipts

16

from this hotel lobby to his employer, not thinking clearly, as he had also submitted false receipts as if he had been in Memphis. It is hard to understand his behavior without attributing it to stress that overwhelmed his ability to comply with his ethical obligations. The SEC's failure to mitigate on the basis of stress contravenes the applicable mitigation guidelines.

### 3. Other "Potentially Mitigating" Factors Apply Herein

Although this Court clearly directed the SEC to consider other potentially mitigating factors, the SEC overlooked or else rejected valid factors beyond Saad's termination and his stress. First, it failed to give merit to the fact that Saad exhibited no incidents of wrongdoing prior to the errant misconduct nine years ago, and that he has exhibited none since. Thus, his "clean disciplinary history" should mitigate his sanction. Second, the fact that Saad's wrongful acts did not harm any investors should also mitigate his sanction. The FINRA rules serve to protect the investing public. *See* FINRA Sanction Guidelines page 1 ("As part of FINRA's regulatory mission, it must stand ready to discipline member firms and their associated persons by imposing sanctions when necessary and appropriate to protect investors, other members of the firm . . . and to promote the public interest."). Barring Saad for life is an over-reach that does not serve this end.

In sum, the SEC has dismissed all circumstances surrounding Saad's

misdeeds and blindly applied the harshest sanction towards him without adequately applying the mitigating factors.

      B.    THIS COURT SHOULD REVERSE THE SEC'S IMPOSITION OF A LIFETIME BAR AS IMPERMISSIBLY PUNITIVE, ESPECIALLY IN LIGHT OF SAAD'S NINE SUBSEQUENT YEARS OF COMPLAINT-FREE CONDUCT.

In the alternative, the lifetime ban must be reversed as an unlawful punishment, as FINRA and the SEC do not have the authority to punish. For nearly a decade now, Saad has endured significant punishment in that he has been precluded from his profession. For regulators who virtually gave a pass to thousands of investment professionals who were complicit in perpetrating securities fraud around CMOs and the sale of other types of "innovative" financial products to the public, the unrelenting pursuit of Saad instead is troubling. Lacking the protection of a "too big to fail" institution, he appeals to this Court for justice and an end to this lifetime punishment. In 2006, Saad lied about expenses worth $1141. There is no basis in light of the relatively minor offenses and all the surrounding mitigating factors, for him to be precluded, in 2016, from practicing in his chosen profession.

CONCLUSION

For the foregoing reasons, this Court should reverse the SEC Decision and vacate the SEC's lifetime bar on Saad.

Respectfully submitted,

Dated:  April 27, 2016
        Washington, D.C.

/s/ Steven N. Berk
Steven Nathan Berk, Esq.
Berk Law PLLC
2002 Massachusetts Avenue, NW
Suite 100
Washington, D.C. 20036
202-232-7550
steven@berklawdc.com

Rachel Schulman, Esq.
Rachel Schulman, Esq. PLLC
14 Bond Street, Suite 143
Great Neck, NY 11021
*Of counsel*

*Attorneys For Petitioner*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I certify that the foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 4410 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit R. 32(a)(1).

I certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.32(a)(6) because the brief has been prepared in a proportionately spaced typeface using Microsoft Word 2011 in 14 point, Times New Roman font.

April 27, 2016                                    /s/ Steven Burk
                                                 Steven Nathan Burk
                                                 *Attorney for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2016, I caused the foregoing Brief for Petitioner to be electronically filed on the D.C. Circuit Court's CM/ECF system, which will automatically send email notification of such filing to counsel for Respondent.

/s/ Steven Burk
Steven Nathan Burk
*Attorney for Petitioner*